**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| ROBERT L. BLACK and CLARA BLACK, | : | |
| Plaintiffs, | : | |
| v. | : | CA 14-00165-CG-C |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

Robert Black ("R. Black") and his mother, Clara Black ("C. Black")[1] bring this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying R. Black's claim for supplemental security income. This action is before the Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, the Commissioner's brief, and the arguments of the parties at the February 4, 2015 hearing before the undersigned (the "Hearing"), it is recommended that Clara Black ("C. Black") be dismissed as a plaintiff from this matter, the brief (the "C. Black Brief") (Doc. 14) filed by C. Black be stricken, and the Commissioner's decision denying R. Black benefits be affirmed.

---

[1]     As discussed below, R. Black is the claimant in the underlying social security petition and the only proper plaintiff in the action before this Court.

**C. Black should be dismissed as a plaintiff,
and the C. Black Brief should be stricken pursuant to FED. R. CIV. P. 11(a)**

As a preliminary mater, the Court addresses C. Black's participation in this action. On April 2, 2014, R. Black and C. Black both signed[2] and filed the Complaint (Doc. 1) in this matter seeking review of the Commissioner's denial of R. Black's application for supplemental security income. C. Black is not a claimant in the underlying social security petition. (*See* Tr. 159-164). Instead, C. Black stated at the Hearing that she is helping her son with his claim. The general rule in the Eleventh Circuit is that non-attorney parents do not have the right to represent their children in federal court.  *Peake v. Comm'r of Soc. Sec.*, Case No. 6:06-cv-1863-Orl-KRS, 2008 WL 495377, at *1 (M.D. Fla. Feb. 20, 2008) (citing *Devine v. Indian River County Sch. Bd.*, 121 F.3d 576, 582 (11th Cir. 1997), *overruled on other grounds by Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007)); *see also Williams v. Monroe Cnty. Bd. Of Educ.*, No. 07-0561-CG-B, 2009 WL 1767658, at *4 (S.D. Ala. June 23, 2009) (quoting another source) ("[P]arents who are not attorneys may not bring a *pro* se action on their child's behalf.")

The Court notes that other circuit courts have recognized an exception to this rule by allowing parents to represent their *minor* children in appealing adverse decisions of the Commissioner of Social Security. *See Adams v. Astrue*, 659 F.3d 1297, 1301 (10th Cir. 2011); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).  However, the Eleventh Circuit Court of Appeals has not recognized such an exception, and the facts of *Adams*, *Machadio*, and *Harris* are inapposite to the scenario currently before the Court. Here, R. Black is not a minor, and while he contends that he is mentally retarded, C. Black informed the Court at the

---

[2]    The Court notes that C. Black actually signed the Complaint itself, and R. Black signed the attached Certificate of Service.

February 4, 2015 hearing that she has not been appointed as his guardian and, as the Court will explain in more detail later, the ALJ found that the claimant has not provided a valid intelligence test suggesting that he is mentally retarded or intellectually disabled.  Therefore, the Court follows the general rule of the Eleventh Circuit and finds that C. Black, as a non-attorney, may not bring a *pro se* action on R. Black's behalf or otherwise represent him in this action.  Accordingly, it is recommended that C. Black be dismissed as a plaintiff in this matter. *See Sabbia v. Comm'r of Soc. Sec. Admin*, 669 F. Supp. 2d 914, 917-18 (N.D. Ill. 2009) (dismissing an individual's children as plaintiffs from a case in which the individual attempted to challenge, *pro se*, the denial of disability benefits for himself *and* his two adult children).

Having determined that C. Black should be dismissed as a plaintiff in the current action, the Court turns to the C. Black Brief.  Although R. Black is pursuing this suit *pro se*, C. Black filed the handwritten brief on behalf of her son. Rule 11 of the Federal Rules of Civil Procedure provides that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." FED. R. CIV. P. 11(a); *see also* S.D. Ala. GenLR 5(a)(4) ("For filings by pro se litigants, the unrepresented party shall personally sign each document filed . . . ."). In the event a pleading, motion or other paper is not properly signed, the Court "must strike [the] unsigned paper unless the omission is promptly corrected after being called to the . . . party's attention." FED. R. CIV. P. 11(a). Here, R. Black did not sign the C. Black Brief, and the undersigned informed R. Black that the brief was not properly signed seven (7) months ago at the Hearing. Yet the C. Black Brief has not been corrected. Therefore, the Court recommends that the C. Black Brief be stricken in accordance with FED. R. CIV. P. 11(a).

<u>**The ALJ's decision is supported by substantial evidence**</u>

The Plaintiff alleges disability due to mental retardation, psychotic disorder, borderline intellectual functioning, and substance abuse. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1. The claimant has not engaged in substantial gainful activity since December 16, 2010, the application date (20 CFR 416.971 *et seq.*).**
>
> **2. The claimant has the following severe impairments: psychotic disorder, bipolar disorder, borderline intellectual functioning, and history of substance abuse (20 CFR 416.920(c)).**
>
> The impairments listed above have been assessed to be severe medically determinable impairments.  A severe impairment is an impairment which significantly limits claimant's physical or mental ability to do basic work activities.
>
> No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment. Under no circumstances may the existence of an impairment be established on the basis of symptoms alone.  An individual's symptoms such as pain, numbness, loss of extremity control, and shaking, will not be found to affect the individual's ability to do work activities unless medical signs and laboratory findings show that there is a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms alleged.
>
> The claimant alleges that his condition affects his capacity to walk. However, the function report further explains that this is attributed to blisters due to his choice of footwear rather than any reported medically determinable impairment. The claimant continues to perform a wide range of daily activities that were not significantly limited by his physical capacity including going outside often. No assistive devices were reportedly used in walking []. These allegations of limitation in walking are unsupported by objective medical evidence and there is no evidence supporting underlying medically determinable impairments in physical function.  The claimant has not sought any significant medical treatment for issues related to his capacity to walk or for the blisters reported in the function report. There are no clinical findings documenting the symptoms and functional issues alleged. Furthermore, no physical impairments were alleged in his disability reports []. Despite reports that he is limited in his capacity to walk, the claimant's choice in shoes and footwear do not constitute a medically determinable impairment. The claimant's allegations of physical limitations were considered, but the claimant was

not determined to suffer from a valid medically determinable physical impairment.

**3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.05, 12.08, and 12.09. In making this finding, the undersigned has considered whether the "paragraph B" criteria ("paragraph D" criteria of listing 12.05) are satisfied. To satisfy the "paragraph B" criteria ("paragraph D" criteria of listing 12.05), the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction. The claimant reports a wide range of daily activities despite the debilitating condition alleged. The claimant attends to personal care and hygiene in an independent and effective manner. While he reports not taking are of any children, he reports putting time in with his son Marcus as well as visiting his sister and friends. He is able to prepare simple meals although his mother does most of the cooking. He does his own laundry weekly but performs no other household chores. He remains able to go outside often and is able to travel unaccompanied. Social activities include putting time in with his son and a few friends, but on a limited basis. He reports less issues getting along with others with medications []. His reported daily activities did not include significant household chores and he reported doing little during the day in the consultative examination []. While the claimant's daily activities may be limited at times, he has demonstrated an effective capacity to perform a wide range of activities in an effective and sustained manner. The evidence fails to support more than mild limitations in his capacity to perform activities of daily living.

In social functioning, the claimant has moderate difficulties. The claimant alleges that he has significant issues getting along with others because of his condition. However, he also reports not having problems getting along with family, friends, or neighbors with the medications being taken. He does report having lost a job in the past as a coworker accused him of stealing and got him fired, but this did not appear to be related to his impairments. Furthermore, he continues to spend time with his son and lives with his mother, and visits with his sister and friends on occasion [].

The claimant does have a documented treatment history for social functioning issues including psychotic disorder. However, treatment records reveal that with ongoing medications and therapy the claimant's behavior and mood are controlled and generally found to be normal []. Psychological examination has found the claimant communicates effectively and normal communication was accomplished. Despite some issues with mood, he showed the capacity for positive affect. While he is reported to have troubled interpersonal relationships, his judgment and insight are fair. However, his motivation and effort on examination was limited and a significant concern. The claimant's history also includes evidence of substance abuse as well as a significant arrest history and brief periods of incarceration for domestic violence and cocaine. He acknowledges in the October 2012 hearing of having had a drinking problem but reports that he has not had anything to drink in the past two years. However, this is contradicted by reports in 2011 that he continues to drink occasionally []. The evidence supports he suffers from significant issues with social functioning considering the nature of mood and psychotic issues addressed with treatment. However, these records also demonstrate that with treatment, the claimant's condition is significantly improved and the residual effects are of no more than a moderate degree.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant reports he suffers from issues with memory, concentration, understanding, following instructions, and completing tasks. He reports issues with paying attention as he has short patience. He performs a limited range of daily activities and notes issues with racing thoughts and focusing []. The claimant has a documented history of special education enrollment, but the evidence reveals that he was able to graduate from high school. Furthermore, he performed several years of work activity following high school including a three-year duration that further supports his adaptive capacity to function. The evidence reveals that his issues in this area have improved with treatment. On examination in February 2011, the claimant was fully oriented. While he performed poorly on cognitive testing as well as on testing of memory and concentration, the examiner determined that the claimant's testing results and effort on examination were inconsistent with his education history and ability to drive. The claimant's history demonstrated a capacity for adaptive functioning that remains inconsistent with his performance on examination and testing []. Ongoing treatment records also reveal that with ongoing therapy and with medications administered, the claimant has shown memory and concentration that is found to be generally normal, despite evidence cited of cognitive deficits of unknown severity. However, these treatment records reflect no assessments of more than a moderate degree in symptoms or limitations []. While the claimant has limited cognitive deficits, his history of adaptive functioning in graduating school, several years of work activity, the capacity to drive, and concerns regarding motivation during testing were found to invalidate the results of cognitive testing. The evidence supports he has some limitations in this area, but the claimant has demonstrated a capacity

to function that is inconsistent with more than moderate limitations in this area during the relevant period.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. The claimant's mental condition has required no emergency treatment, hospitalizations or commitments for treatment during the relevant period. The course of treatment remains regular but does not reflect significant exacerbations in his mental condition. The claimant's condition continues to be treated with therapy and medications, with only minimal adjustments in treatment and steady consistent clinical findings with the treatment prescribed []. The evidence fails to support or document any fluctuations in the claimant's condition that would constitute episodes of decompensation.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria ("paragraph D" criteria of listing 12.05) are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria of 12.04, 12.08, and 12.09 are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.  The claimant has a medically documented history of mental impairments of at least two years duration, which cause more than minimal limitations despite treatment. However, the claimant's condition has not resulted in repeated episodes of decompensation, residual disease process with which minimal changes would cause decompensation, or history of inability to function outside a highly supportive living arrangement. The claimant also retains the capacity to function outside the area of the home.

The limitations identified in the "paragraph B" ("paragraph D" criteria of listing 12.05) criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments []. Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

Turning back to listing 12.05, the requirements in "paragraph A" are met when there is a mental incapacity evidenced by dependence upon others for personal needs (e.g. toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded.  In this case, these requirements are not met because by the claimant's own function report he remains

capable of attending to personal needs in an independent and sustained manner [].

As for the "paragraph B" criteria, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ o 59 or less. There are no valid IQ scores within the range expressed under the "paragraph B" criteria.

Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Results of the cognitive testing performed during the February 2011 consultative examination include a full-scale IQ of 68. However, as noted by the consultative examiner these results are not found to be valid. There are issues with motivation during testing. Furthermore, the claimant's capacity for adaptive functioning also suggested these results were an underestimate of his abilities and are not a valid measure of his cognitive functioning, noting his education history and capacity to drive, which are inconsistent with the testing results []. Furthermore, the claimant's work history includes evidence of several years of sustained work activity, which supports the capacity for adaptive functioning also inconsistent with the results of cognitive functioning []. As determined by the psychological examiner, the claimant's cognitive testing results were invalid.  These scores fail to satisfy the criteria under this paragraph.

**4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: claimant can perform simple work related decisions with few workplace changes; occasional contact with the general public; attend for at least 2 hour periods of time and moderate instructions.**

.     .     .

**5. The claimant is unable to perform any past relevant work (20 CFR 416.965).**

.     .     .

**6. The claimant was born on March 7, 1981 and was 29 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).**

**7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).**

**8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).**

**9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).**

.      .      .

**10. The claimant has not been under a disability, as defined in the Social Security Act, since December 16, 2010, the date the application was filed (20 CFR 416.920(g)).**

(Tr. at 15-26) (internal citations omitted). The Appeals Council affirmed the ALJ's decision (Tr. at 1-3) and, thus, the hearing decision became the final decision of the Commissioner of Social Security.

A claimant is entitled to an award of supplemental security income benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months. *See* 20 C.F.R. § 416.905(a). In determining whether a claimant has met his burden of proving disability, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. At step one, if a claimant is performing substantial gainful activity, he is not disabled. 20 C.F.R. § 416.920(b). At the second step, if a claimant does not have an impairment or combination of impairments that significantly limits his physical or mental ability to perform basic work activities, he is not disabled. 20 C.F.R. § 416.920(c). At step three, if a claimant proves that his impairments meet or medically equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the claimant will be considered disabled without consideration of age, education, and work experience. 20 C.F.R. § 416.920(d). At the fourth step, if the claimant is unable to prove the existence of a listed impairment, he must prove that his physical and/or mental impairments

9

prevent him from performing his past relevant work.  20 C.F.R. § 416.920(f).  And, at the fifth step, the Commissioner must consider the claimant's residual functional capacity (RFC), age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work.  20 C.F.R. § 416.920(g).  Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process, *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987), and while the burden of proof shifts to the Commissioner at the fifth step of the process to establish other jobs existing in substantial numbers in the national economy that the claimant can perform,[3] the ultimate burden of proving disability never shifts from the plaintiff, *see, e.g., Green v. Social Security Administration*, 223 Fed. App'x 915, 923 (11th Cir. May 2, 2007) ("If a claimant proves that she is unable to perform her past relevant work, in the fifth step, 'the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform.' . . . Should the Commissioner 'demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.'").[4]

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny a claimant benefits, on the basis that he can perform those jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a

---

[3] *See, e.g., McManus v. Barnhart,* No. 5:04-CV-67-OC-GRJ, 2004 WL 3316303, *2 (M.D. Fla. Dec. 14, 2004) ("The burden [] temporarily shifts to the Commissioner to demonstrate that 'other work' which the claimant can perform currently exists in the national economy.").

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.

reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).⁵ Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).  And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'"  *Id.* (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

After reviewing the administrative record, R. Black's complaint, the Commissioner's answer, the Commissioner's brief, and the arguments made at the Hearing, the undersigned has determined that R. Black asserts two reasons why the Commissioner's decision to deny him supplemental security income is in error (*i.e.*, not supported by substantial evidence): (1) the ALJ erred by not finding that R. Black had severe impairments and (2) in making his determination, the ALJ erred by not considering that (a) the disability application process has placed stress on C. Black or (b) an award of disability benefits would be financially helpful to R. Black or C. Black.

---

⁵      This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

**A.     ALJ's Determination as to the Severity of R. Black's Impairments**

The Complaint provides that R. Black has the following severe impairments: psychotic disorder, bipolar disorder, mental retardation, [6] borderline intellectual functioning, and a history of substance abuse. In his decision, the ALJ found that "**[t]he claimant has the following severe impairments: psychotic disorder, bipolar disorder, borderline intellectual functioning, and history substance abuse.**" (Tr. at 15) (emphasis in original)). Thus, aside from mental retardation, the ALJ found that all of the other impairments claimed by R. Black were severe. Assuming, *arguendo,* that the ALJ erred by not including mental retardation in the list of severe impairments at step two of the sequential evaluation process, the error is harmless as the ALJ found that R. Black suffered from other severe impairments, proceeded through the remaining steps of the sequential evaluation, and considered the effects of all of R. Black's impairments, including his intellectual functioning and alleged mental retardation. *See Loftin-Taylor v. Astrue*, No. 11-00281-B, 2012 WL 3631087, at *8 (S.D. Ala. Aug. 21, 2012) (citing another source) ("[N]otwithstanding the fact that the ALJ did not include Plaintiff's depression as a severe impairment, the record demonstrates that the ALJ carefully considered all the relevant evidence, including that relating to depression, through all five steps of the sequential inquiry; thus, the error at step two is harmless and not cause for reversal."); *Huff v. Astrue*, No. 11-266-N, 2012 WL 2979012, at *5-6 (S.D. Ala. July 20, 2012) ("[W]here the record shows that the ALJ actually did consider all impairments, severe and non-severe, at later stages of the analysis have the courts found that the failure to find a

---

[6]     Actually, the Complaint provides "mental impairment" instead of "mental retardation," but upon review of the administrative record, the pleadings, the Commissioner's brief, and the arguments made at the Hearing, it is clear to the Court that R. Black contends that he is mentally retarded.

particular impairment to be severe was harmless error."); *Delia v. Comm'r of Soc. Sec.*, 433 Fed. App'x 885, 887 (citing another source) (11th Cir. 2011) ("Because the ALJ gave full consideration to the consequences of [the claimant]'s **mental impairments** on his ability to work at later stages of the analysis, the error [of finding that the claimant's mental impairments were not severe] at step two was harmless and is not cause for reversal."); *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. App'x 823, 825 (citing another source) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination.").

At step three of the sequential evaluation process – whether the claimant proves that his impairments meet or medically equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404 – the ALJ considered all of R. Black's mental impairments, singly and in combination, when determining that his condition does not meet or equal the severity of one of the listing of impairments. In fact, as the Court will discuss in more detail later, the ALJ specifically addressed section 12.05, the mental retardation listing,[7][8] and explained why R. Black's mental impairments did not meet or

---

[7]      "[Mental retardation] refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. "'Adaptive functioning' refers to a person's ability to perform activities of daily living and social functioning." *Fischer v. Barnhart,* 129 Fed. App'x 297, 301-02 (7th Cir. 2005) (citation omitted).

[8]      Listing 12.05 was amended on August 1, 2013, to replace the words "mental retardation" with "intellectual disability." *See* 78 Fed. Reg. 46,499, 46,501 (codified at 20 C.F.R. pt. 404, Subpt. P, App. 1). "The Social Security Administration stated that the change 'does not affect the actual medical definition of the disorder or available programs or services.'"  *Hickel v. Comm'r of Soc. Sec.,* 539 Fed. App'x 980, 982 n.2 (11th Cir. 2013) (citing 78 Fed.Reg. 46,500). As in *Hickel,* the undersigned uses the old term "mental retardation" throughout this opinion to avoid confusion because it is the term used by the parties and the ALJ.

equal the mental retardation listing. Further, the ALJ considered all of R. Black's mental impairments, including any cognitive deficits, when determining his RFC and in determining that he is unable to perform any past relevant work (step four of the sequential evaluation process) and that there are jobs that exist in the significant numbers in the national economy that he can perform (step five of the sequential evaluation process). Therefore, even if the ALJ erred in not including mental retardation as a severe impairment at step two of the evaluation process, the error is harmless.

Turning to the ALJ's finding that R. Black's impairments or combination of impairments do not meet or medically equal the severity of one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the Court finds that determination to be supported by substantial evidence. In his decision, the ALJ explicitly evaluated the claimant's mental impairments under sections 12.04, 12.05, 12.08, 12.09. Regarding section 12.05, the ALJ found that none of the paragraphs contained within the section were satisfied. The ALJ's decision that the paragraph A criteria is not met is supported by the claimant's own function report in which he indicated that his impairments do not affect his ability to dress himself, bathe himself, feed himself, or use the restroom by himself. (Tr. at 184-85). The ALJ's determination that R. Black did not satisfy the criteria of paragraphs B, C, and D because he does not have a *valid* full scale IQ score reflecting any of the required scores is sufficiently supported by the evidence as well. As the ALJ explained in his decision, the results from the claimant's February 2011 Mental Examination/WAIS-IV does include a Full Scale IQ of 68, however, the examiner provided the following commentary about the examination and the intelligence test:

> [I]t is felt by this examiner that the results are not a reliable or valid estimate of this claimant's current level of intellectual functioning due to the claimant not putting forth a best effort. It is felt that these results represent an underestimation of his abilities. He graduated from high school and has a driver's license, which is inconsistent with test results. *The WAIS-IV was found to be invalid.*

(Tr. at 246) (emphasis added); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(6)(a) ("[S]ince the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."). Thus, the ALJ's decision that R. Black does not have a *valid* verbal, performance, or full scale IQ of the range provided in paragraphs B, C, and D is substantially supported by the evidence.

As for sections 12.04 and 12.08, the ALJ found that R. Black does not satisfy the paragraph B criteria provided in each section. Paragraph B of both section 12.04 and section 12.08 require that the claimant's listing impairment results in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.08(B). First, the ALJ found that R. Black has a mild restriction of activities of daily living. This determination is supported by the claimant's own function report in which he indicated that while he does not take care of any children and his mother cooks most of his meals, he puts in time with his son, visits his sister and friends, watches television, dresses himself, bathes himself, feeds himself, uses the restroom by himself, prepares simple meals daily, washes clothes weekly, is able to drive and ride in a car, and is able to go outside. (Tr. at 183-88). Second, the ALJ found that R. Black has moderate difficulties in

maintaining social functioning. This finding is supported by the claimant's own function report in which he provided that although he lost a job in the past because a coworker accused him of stealing, he has not had any problems getting along with family, friends, neighbors, or others since taking his medication. (Tr. at 187-89). In addition, R. Black's medical treatment records from AltaPointe Health Systems ("AltaPointe") indicate that while he has been treated for social functioning issues, including psychotic disorder, with ongoing medication and therapy, his behavior and mood have been generally normal and controlled. (Tr. at 266-92). Third, the ALJ found that the claimant has moderate difficulties maintaining concentration, persistence, or pace. Despite the claimant's complaints that he suffers from issues with memory, concentration, understanding, following instructions and completing tasks, this finding is supported by the claimant's documented history of graduating high school, working for several years, and driving a vehicle. (Tr. at 176-92). R. Black's medical treatment records from AltaPointe additionally indicate that with ongoing therapy and medication, he has shown generally normal levels of memory and concentration. (Tr. at 228-41, 266-92). Finally, the ALJ found that the claimant has experienced no episodes of decompensation of extended duration. This is supported by the claimant's medical treatment records from AltaPointe, which span from October 2010 to May 2012 and show that R. Black's condition, while treated with therapy and medications, has remained steady and consistent. (*Id.*). For these reasons, the Court finds that the ALJ's determination that R. Black's mental impairments, considered singly and in combination, do not result in at least two of the aforementioned "marked" limitations

under the paragraph B criteria of section 12.04 and section 12.08 is supported by sufficient evidence.[9]

The ALJ also analyzed R. Black's mental impairments under Paragraph C of 12.04. Specifically, 12.04(C) requires the following:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1.  Repeated episodes of decompensation, each of extended duration; or
>
> 2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C). In applying the criteria of 12.04(C), the ALJ found that R. Black has a medically documented history of mental impairments of at least two years duration, which cause more than minimal limitations despite treatment, but that he does not satisfy any of the three enumerated requirements in paragraph C. The Court finds that this determination is supported by substantial evidence. As the Court previously explained, R. Black's medical treatment records from AltaPointe, which span from October 2010 to May 2012, show that his condition, under

---

[9]     The paragraph B criteria provided in section 12.04 and section 12.08 is also identical, outside of the requirement for a valid verbal, performance, or full scale IQ of 60 through 70, to paragraph D of 12.05. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(D). Because the ALJ considered all of the claimant's mental impairments, singly and in combination, when determining whether they result in at least two of the "marked" limitations, the ALJ also found that R. Black's condition does not satisfy paragraph D of section 12.05. Accordingly, the Court's analysis as to whether the ALJ's determination that R. Black does not satisfy the paragraph B criteria of section 12.04 and section 12.08 is supported by substation evidence also applies to the ALJ's decision as to whether R. Black satisfies paragraph D of 12.05.

treatment of therapy and medications, has remained steady, and, therefore, R. Black has not had repeated episodes of decompensation. (Tr. at 228-41, 266-92). Further, nothing in these reports suggest that a minimal increase in the claimant's mental demands or a change in his environment would predictably cause him to decompensate. To the contrary, the consistent and stable status of R. Black's condition as shown over the eighteen (18) months the reports were generated support the ALJ's finding that minimal increases in the claimant's mental demands or changes in his environment would not predictably cause him to decompensate. Finally, the ALJ's finding that R. Black does not have a current history of an inability to function outside a highly supportive living arrangement is supported by the claimant's own function report in which he indicated that he dresses himself, bathes himself, feeds himself, uses the restroom by himself, prepares simple meals daily, washes clothes weekly, is able to drive and ride in a car, and is able to go outside.  (Tr. 183-88).

The Court notes that the ALJ provided in his decision that he evaluated R. Black's mental impairments under section 12.09, the section pertaining to substance addiction disorders, which concern "behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.09. Section 12.09 is structured as a reference listing and only serves to indicate which of the other impairments "must be used to evaluate the behavioral or physical changes resulting from regular uses of addictive substances." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00(a), 12.09. While the ALJ did not specify which other listed impairments he was evaluating by reference, the Court finds that such a determination is implicit in the record. *See Prince v. Comm'r of Soc. Sec.*, 551 Fed. App'x 967, 969 (11th Cir. 2014) (citing another source) ("The ALJ's finding as to whether a claimant does or does not meet a listed impairment may be implied from the record.");

18

*Hutchinson v. Brown*, 787 F.2d 1461, 1463 (11th Cir. 1986) ("[I]t is not required that the [ALJ] mechanically recited the evidence leading to her determination.") The ALJ stated that he analyzed all of the claimant's mental impairments under both paragraphs B and C of section 12.09 as he did for sections 12.04 and 12.08. (Tr. at 16-18). Thus, the Court infers from the record that the ALJ evaluated the claimant's mental impairments under section 12.02 (organic mental disorders) or section 12.04 (depressive syndrome), the two listing impairments referenced in section 12.09 that have substantively identical criteria in their respective paragraphs B and C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02(B), (C) & 12.08(B), (C). Thus, for the reasons previously stated as to why the ALJ's determination that R. Black's mental impairments do not satisfy the paragraph B or C criteria of sections 12.04 and 12.08 is supported by substantial evidence, the Court finds that the ALJ's equivalent determination under 12.09 supported by substantial evidence. *See supra* note 9.

Likewise, the Court also finds that the record shows that the ALJ implicitly found that R. Black's mental impairments, including the psychotic disorder severe impairment the ALJ identified at step 2 of the sequential evaluation process, does not meet or medically equal the criteria of section 12.03, which pertains to schizophrenic, paranoid, and other psychotic disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03. Because section 12.03 contains paragraphs B and C that are substantively identical to paragraphs B and C contained in section 12.04 and section 12.08, the Court's analysis that the ALJ's determination that R. Black's mental impairments do not satisfy the paragraph B or C criteria of sections 12.04 and 12.08 is supported by substantial evidence equally applies to the evaluation of R. Black's mental impairments under section 12.03. For these reasons, the Court finds that the ALJ's determination that R. Black's impairments or combination of impairments do not meet or medically equal the

severity of any of the listed impairments set forth in Appendix 1 to Subpart P of Part 404 is supported by substantial evidence.

### B. The ALJ's Consideration of Additional Factors

Apparently, R. Black contends that the ALJ erred when denying R. Black's claim for supplemental security income by not considering that (a) the disability application process has placed stress on C. Black or (b) an award of disability benefits would be financially helpful to R. Black or C. Black.  The Court finds that these additional factors are irrelevant to the ALJ's determinations under the law, and, therefore, the ALJ did not err by not considering them. *See generally* 42 U.S.C. §§ 1381 *et seq.*; 20 C.F.R. §§ 416.905(a) & 416.920.

### C. Remaining Aspects of the Commissioner's Decision

Substantial evidence of record supports the Commissioner's decision that (a) R. Black has the RFC to perform a full range of work with the following non-exertional limitations: he can perform simple work related decisions with few workplace changes; he can have occasional contact with the general public; he can attend for at least 2 hour periods of time, and he can follow moderate instructions (*see* Tr. at 19-24), and (b) after considering R. Black's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.  (*Id.* at 25-26). Further, R. Black makes no argument that the ALJ erred in determining R. Black's RFC or determining whether R. Black is able to do any other work considering his RFC, age, education, and work experience. Thus, the undersigned recommends that the Commissioner's determination of R. Black's RFC be affirmed, *see Packer v. Astrue*, No. 11-0084-CG-N, 2013 WL 593497, at *4 (S.D.Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd*, 542

Fed. Appx. 890 (11th Cir. 2013); *see also Hanna v. Astrue*, 395 Fed. App'x 634, 636 (11th Cir. 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)), and the Commissioner's fifth-step determination be affirmed. *See, e.g., Owens v. Comm'r of Soc. Sec.*, 508 Fed. App'x 881, 883 (11th Cir. 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given his RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]" (citations omitted)); *Land v. Comm'r of Soc. Sec.*, 494 Fed. App'x 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

## CONCLUSION

In light of the foregoing, the Magistrate Judge recommends that C. Black be dismissed as a plaintiff from this matter, the C. Black Brief be stricken, and the decision of the Commissioner of Social Security denying R. Black benefits be affirmed.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific

written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 17th day of September, 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**